**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

FRANK SKINNER,                          )
                                        )
    Movant,                       )
                                        )
                                        )      No. 2:12-cv-02402-JPM-tmp
v.                                      )      Cr. No. 2:10-cr-20017-JPM-1
                                        )
UNITED STATES OF AMERICA,               )
                                        )
    Respondent.                   )

**ORDER DENYING AS MOOT MOTION TO AMEND;**
**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255;**
**ORDER DENYING CERTIFICATE OF APPEALABILITY;**
**AND**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**

On May 25, 2012, Defendant Frank Skinner, Bureau of Prisons
registration number 23455-076, an inmate at FCC Forrest City Low
in Forrest City, Arkansas, filed a Motion pursuant to 28 U.S.C.
§ 2255 ("§ 2255 Motion"). (ECF No. 1.) On October 31, 2012,
the Court directed the United States to file a response. (ECF
No. 2.) On December 13, 2012, the Court once again directed the
United States to file a response. (ECF No. 3.) The United
States filed a response on February 19, 2013. (ECF No. 6.) On
March 1, 2013, Movant filed a Motion to Amend Movant['s] 28
U.S.C. 2255 [Motion] and Response to the Government['s]
Responses. (ECF No. 7.) Because the Motion to Amend raises no
new claims and may be properly considered as a reply to the

Government's response, the Court considers Movant's arguments in the Motion to Amend and DENIES AS MOOT the Motion to Amend.

For the reasons stated below, the § 2255 Motion is DENIED, and a certificate of appealability is DENIED. The Court also finds that an appeal would not be taken in good faith. Leave to appeal in forma pauperis is DENIED.

## I. BACKGROUND

On January 13, 2010, a federal grand jury indicted Frank Skinner in a four-count Indictment charging him with: (Count One) unlawfully obstructing, delaying, and affecting commerce by robbery, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2; (Count Two) knowingly using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2; (Count Three) unlawfully obstructing, delaying, and affecting commerce by robbery, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2; and (Count Four) knowingly using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. (United States v. Skinner, No. 2:10-cr-20017-JPM-1 (W.D. Tenn.), ECF Nos. 1–3.) On February 2, 2011, Cole pled guilty to Counts One, Three, and Four of the Indictment pursuant to a written plea agreement. (Id., ECF Nos. 101, 103, 104.) The plea agreement provided:

2

<u>**PLEA AGREEMENT**</u>

**The full and complete plea is as follows:**

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton, III, United States Attorney for the Western District of Tennessee, and LORRAINE CRAIG, Assistant United States Attorney, the defendant, FRANK SKINNER, represented by T. CLIFTON HARVIEL, defense counsel. The parties enter into the following Plea Agreement pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure. It being the intention of the parties that the Court may accept or reject this agreement immediately or after having had an opportunity to review the pre-sentence report, but may not modify the agreement. Except with respect to any non-binding recommendations to be made by the United States, if the Court rejects the agreement either party may withdraw from the agreement.

FRANK SKINNER agrees that he will enter a voluntary plea of guilty to count(s) 1 ,3and4 [sic] of the indictment.

The United States agrees to dismiss any remaining counts of the indictment against the defendant at the appropriate time.

The United States and the defendant agree to recommend and request that the Court impose a term of 300 months imprisonment. Both parties understand that this recommendation is not binding on the Court, and both parties agree that either party may withdraw from the plea agreement should the Court reject the recommendation of 300 months imprisonment.

The Defendant understands that Title 18, United States Code Section 3742 gives him the right to appeal the sentence imposed by the Court.  Acknowledging this, defendant knowingly and voluntarily waives his right to appeal the sentence imposed and the manner in which the sentence is determined so long as the sentenced imposed by the Court is  is [sic] 300 months imprisonment. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply

to claims related to prosecutorial misconduct and
ineffective assistance of counsel.

FRANK SKINNER agrees that this plea agreement
constitutes the entire agreement between himself and
the United States and that no threats have been made
to induce him to plead guilty. By signing this
document, FRANK SKINNER acknowledges that he has read
this agreement, has discussed it with his attorney and
understands it.

(Id., ECF No. 104 at PageID 132-33.)

A presentence investigation report ("PSR") was prepared

recommending a total offense level of twenty-seven for Counts

One and Three, and a criminal history score of zero.  (PSR at

11-12.)  For Count Four, pursuant to U.S.S.G. § 2K2.4(b), the

guideline sentence was determined to be the statutory minimum of

seven years of imprisonment.  (Id. at 12.)

On May 17, 2011, Defense counsel filed his Position with

Respect to Sentencing Factors.  (United States v. Skinner, No.

2:10-cr-20017-JPM-1 (W.D. Tenn.), ECF No. 128.)  Defense counsel

stated: "Mr. Skinner and his attorney have been over the Pre-

Sentence Investigation Report and there are no objections to the

calculations therein."  (Id. at PageID 182.)

On May 26, 2011, the Court held Skinner's sentencing

hearing.[1]  At the hearing, the Court described the benefit that

the plea agreement offered Skinner:

---

[1] The Sentencing Hearing transcript incorrectly states the date of the hearing
as May 26, 2012.  (United States v. Skinner, No. 2:10-cr-20017-JPM-1 (W.D.
Tenn.), ECF No. 184.)  The hearing was in fact held on May 26, 2011.  (Id.,
Minute Entry, ECF No. 139.)

4

[Without the plea agreement] we would have ended
up with [] seven years consecutive to the sentence in
the initial matter or the robberies themselves plus an
additional 25 years, so we would have started with a
Count 2 and a Count 4 combined consecutive of 32
years, and that is the reason that -- that's
substantially more than the 25-year sentence, and that
does not include the period as to which an individual
received a sentence in connection with the illegal
conduct, that is specifically the robberies
themselves.  So the robberies themselves would have a
range under Counts 1 and 3 of not more than 20 years
per count, which would have been 72 to 87 months under
the guidelines, so it helps us understand, it helps
everybody think -- understand why the sentence would
be [] one which the defendant would agree.

(Id., ECF No. 184 at PageID 340-41; see PSR ¶¶ 79, 80.)

The Court also spoke to Skinner at some length to ensure

that he understood the waiver of his right to appeal to which he

was agreeing in the plea agreement:

I know that you have agreed to waive your right
to appeal if the court imposes this sentence because
of the benefits obtained by you as a result of the
plea agreement.  So that was your decision, it is a
right that you have agreed to waive.  I'm required,
however, to tell you about your rights to appeal no
matter what, and also because you have a right to
appeal prosecutorial misconduct in which there is
absolutely no evidence in this case, and ineffective
assistance of counsel which there is absolutely no
evidence.  In fact, you have had good counsel who has
greatly reduced your exposure in the case, but I'm
required to tell you anyway.

You can appeal your conviction normally if you
didn't waive your right if you believed that your
guilty plea was somehow unlawful or involuntary or if
there's some other fundamental defect in the
proceedings not waived by your guilty plea, and you
would normally be able to appeal your sentence under
certain circumstances, particularly if you thought

5

that the sentence was contrary to law.  You have
agreed to waive that.

(Id. at PageID 376-77.)  The Court then stated: "Now, in this

case, for the benefits received under the plea agreement, you

have agreed to waive your right to appeal.  Is it your intention

to waive your right to appeal in this case?"  (Id. at PageID

377.)  Skinner responded, "Yes."  (Id.)

        In light of the recommended Guideline range, the arguments

of counsel, and the factors articulated in 18 U.S.C. § 3553(a),

the Court accepted the plea agreement and sentenced Frank

Skinner to a term of imprisonment of 300 months (216 months on

Counts 1 and 3, and 84 months on Count 4, to be served

consecutively), three years of supervised release, restitution

of $52,835.49, and a special assessment of $300.  (Id. at PageID

368-70, 372-76.)

**II.    LEGAL STANDARD**

        Pursuant to 28 U.S.C. § 2255(a),

        [a] prisoner in custody under sentence of a court
        established by Act of Congress claiming the right to
        be released upon the ground that the sentence was
        imposed in violation of the Constitution or laws of
        the United States, or that the court was without
        jurisdiction to impose such sentence, or that the
        sentence was in excess of the maximum authorized by
        law, or is otherwise subject to collateral attack, may
        move the court which imposed the sentence to vacate,
        set aside or correct the sentence.

        "A prisoner seeking relief under 28 U.S.C. § 2255 must

allege either:  (1) an error of constitutional magnitude; (2) a

sentence imposed outside the statutory limits; or (3) an error
of fact or law that was so fundamental as to render the entire
proceeding invalid." Short v. United States, 471 F.3d 686, 691
(6th Cir. 2006) (internal quotation marks omitted). A defendant
has the burden of proving that he is entitled to relief by a
preponderance of the evidence. Pough v. United States, 442 F.3d
959, 964 (6th Cir. 2006).

"If claims have been forfeited by virtue of ineffective
assistance of counsel, then relief under § 2255 would be
available subject to the standard of Strickland v. Washington,
466 U.S. 668 . . . (1984)." Grant v. United States, 72 F.3d
503, 506 (6th Cir. 1996). To demonstrate deficient performance
by counsel, a petitioner must demonstrate that "counsel's
representation fell below an objective standard of
reasonableness." Strickland, 466 U.S. at 687-88.

> A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. [Strickland,
> 466 U.S.] at 689. The challenger's burden is to show
> "that counsel made errors so serious that counsel was
> not functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at 687.

Harrington v. Richter, 562 U.S. 86, 104 (2011). To demonstrate
prejudice, a prisoner must establish "a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Strickland, 466 U.S. at

694.[2]  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  <u>Id.</u>

> It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding."
> [<u>Strickland</u>, 466 U.S.] at 693.  Counsel's errors must
> be "so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable."  <u>Id.</u>, at
> 687.

<u>Richter</u>, 562 U.S. at 104.

The two-part test stated in <u>Strickland</u> applies to

challenges to guilty pleas based on the ineffective assistance

of counsel.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58 (1985).

"Where, as here, a defendant is represented by counsel during

the plea process and enters his plea upon the advice of counsel,

the voluntariness of the plea depends on whether counsel's

advice 'was within the range of competence demanded of attorneys

in criminal cases.'"  <u>Id.</u> at 56 (quoting <u>McMann v. Richardson</u>,

397 U.S. 759, 771 (1970)).  "[T]o satisfy the 'prejudice'

requirement, the defendant must show that there is a reasonable

probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."  <u>Id.</u>

at 59; <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010) ("[T]o

obtain relief on this type of claim, a petitioner must convince

---

[2] "[A] court need not determine whether counsel's performance was deficient
before examining the prejudice suffered by the defendant."  <u>Strickland</u>, 466
U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not
determine whether, in fact, counsel's performance was deficient.  <u>Id.</u>

the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## III. __ANALYSIS__

Skinner argues that his attorney was ineffective for four reasons: (1) for advising Skinner to accept the guilty plea (§ 2255 Motion at PageID 4); (2) failing to withdraw the guilty plea or achieve "some other form of remedy" during sentencing (id. at PageID 5-6); (3) failing to consult Skinner about whether to file an appeal (id. at PageID 7); and (4) failing to alert the Court that "a six point firearm enhancement for Count One was double-counting" (id. at PageID 8). The Court addresses each argument in turn.

### A.   **Advising Skinner to Accept the Guilty Plea**

According to Movant, defense counsel "incorrectly advised" him that "the Government would easily establish my Guilt on every Count and that I would likely receive a Life [sic] sentence under the Guidelines." (Id. at PageID 4.) Skinner also asserts that defense counsel "failed to inform [him] that the Guidelines recommended a sentence far less than the Government's Plea Offer." (Id.)

Respondent argues that these arguments are without merit for three reasons:

> 1) the guideline sentence that applied to the four
> count Indictment as outlined in ¶¶ 78-81 of the PSR
> was substantially greater than the twenty-five year

sentence the defendant received per the terms of the plea agreement; 2) the avoidance of the additional 924(c) conviction greatly reduced the defendant's exposure; and, 3) counsel was not ineffective for correctly advising the defendant of his exposure and the resulting penalties should he not accept the government's offer.

(ECF No. 6 at 8.)

The Court agrees with Respondent. The evidence in this case appears to have been overwhelming against Skinner. The relevant offense conduct described in the PSR is included here in full:

5.   According to the investigative file, on September 13, 2009, officers with the Memphis Police Department responded to the Pizza Hut located at 6532 Quince Road, Memphis, TN, in regards to a robbery of the business. Upon arrival, officers made contact with victims/employees, Shaun Williams and Sandra Williams. Shaun Williams advised that he heard a loud noise, at which time he looked up to see a suspect pointing a revolver at him. Further, the suspect advised him to "get on the ground." Sandra Williams stated that a second suspect told her, "Open the safe bitch, and don't look at me." She complied, at which time the second suspect took an undetermined amount of money from the safe. Both of the suspects then jumped across the counter and exited the business through the front door. No one was harmed at the time of the incident.

6.   On September 14, 2009, officers made contact with victim/employee, Retia Lawson, who advised that she was present during the robbery of the business. She reported that she was in the back of the business when she heard the door bell ring, which indicated that someone had entered the business. She then observed two suspects jump across the counter. Retia Lawson advised that a suspect put a handgun to Sandra Williams' head and demanded that she open the safe. The suspects took approximately $650 from the safe and then exited the business. Retia Lawson also advised

10

that Pizza Hut delivery driver, Gary Frame, was outside and observed the incident. Contact with Gary Frame revealed he pulled up to the Pizza Hut employee entrance when he observed two suspects jump across the counter in the business and then run westbound on Quince Road, Memphis, TN.

7.    On November 8, 2009, officers were en route to the Pizza Hut located at 6532 Quince Road, Memphis, TN, in regards to a robbery of the business, when they were advised that the suspects were being followed by a witness/employee, Steven Moss. Steven Moss utilized his cell phone to inform the 911 dispatcher as to which direction the suspects traveled. Officers located the suspects' vehicle traveling northbound on Mt. Moriah at Clarke Road and attempted to execute a traffic stop; however, the driver of the vehicle refused to stop. Officers continued the pursuit to the intersection of Mt. Moriah and Edenshire Avenue, where the vehicle "jumped the curb" and crashed into a house, located at 4982 Edenshire Avenue, Memphis, TN, causing extensive damage. The suspects bailed out of the vehicle, ran through the house, out the back door, and over the fence. After a foot chase, officers apprehended the suspects, who were identified as Markavious Anderson, **Frank Skinner**, and [a juvenile].

8.    [The juvenile] was transpoted to the Memphis Police Department – Felony Response Unit. However, Markavious Anderson and **Frank Skinner** were transported to the Regional Medical Center at Memphis due to injuries received from the auto accident.

9.    A search of the suspect vehicle resulted in the discovery of a Keltec 911 .9 mm handgun, serial number A4Y38[;] six live .9 mm rounds; one clip; one black ski mask; two baseball caps; and one black hooded jacket. Assorted money and a money bag, which contained a total of $710.80, was seized and returned to the Pizza Hut manager.

10.   Officers subsequently made contact with the victims/employees, including Jared Hyder, Retia Lawson, Shaun Williams, and Steven Moss. Jared Hyder advised that he was standing outside, smoking a cigarette by the employee entrance, when he was approached by two male suspects wearing ski masks and armed with handguns. He stated, "the skinny one came

up to me and put the gun to my chest and the larger one kind of flanked me. They said, come on, this is happening." The suspects knew the security code to the employee entrance, and used it to gain entry. Once inside, they ordered the employees to get on the ground. They subsequently ordered Retia Lawson to open the safe. She advised them that the safe would take ten minutes to open because of a time delay. A suspect then took $5 and the business deposit from her apron. The suspects also searched her pockets and her purse to make sure she did not have any more money. The suspects then grabbed Shaun Williams and ordered him to open the cash registers. After Shaun Williams opened the cash registers, they made him get back on the ground. At that point, a suspect asked Retia Lawson how much longer it would take for the safe to open. She responded that approximately four minutes remained. Retia Lawson stated the suspect then "cocked his pistol and pointed it at me like he was fixing to shoot me." Both of the suspects yelled and questioned why it was taking so long to open. Jared Hyder responded that it was on a time delay because of "stuff like this." At that time, a suspect "pistol whipped" him in the back of the head with a firearm. About that time, Steven Moss pulled up to the business. The suspects became nervous and told the employees to get off the ground. They said, "Let's go because whoever is out there is going to call the police." The employees advised the suspects that exiting through the rear door was their best option to avoid apprehension. As soon as they exited, Jared Hyder ran to the front door and advised Steven Moss to follow the suspects. As he followed in his vehicle, Steven Moss called 911 and provided the location of the suspects until law enforcement authorities responded. After the robbery, Retia Lawson stated that she was "crying and throwing up."

. . . .

12. On November 9, 2009, after being advised of his rights, **Frank Skinner** provided a post-arrest statement. He reported he was forced by [the juvenile], at gunpoint, to participate in the Pizza Hut robbery, which occurred on November 8, 2009.

13. On November 10, 2009, after being advised of his rights, Markavious Anderson provided a post-arrest

statement.  When questioned about the Pizza Hut
robbery, which occurred on November 8, 2009, he stated
that an employee of the business, Shaun Williams,
"told us how to do it."  He stated Shaun Williams
said, "Do it while I'm there.  I guess so he can get
some money, too."  Markavious Anderson, **Frank Skinner**,
and [the juvenile] subsequently traveled to Pizza Hut
in a vehicle owned by Cherita Street, later identified
as the girlfriend of **Frank Skinner**.  Upon arrival,
**Frank Skinner** and [the juvenile] exited the vehicle as
Markavious Anderson drove around the block and parked
in front of a business behind Pizza Hut.  After [the
juvenile] and **Frank Skinner** robbed the business, they
returned to the vehicle and told Markavious Anderson,
"Pull off.  We got the money."  Further, Markavious
Anderson stated that, while in custody, **Frank Skinner**
advised him to claim that [the juvenile] forced them,
at gunpoint, to commit the robbery.

14.  Markavious Anderson also admitted to
participating in the Pizza Hut robbery, which occurred
on September 13, 2009.  He stated that Shaun Williams
"told us what time and how to do it."  Markavious
Anderson, **Frank Skinner**, and Terrence Sims
subsequently traveled to the business and called Shaun
Williams, who advised them to "come on in."  **Frank
Skinner** acted as the driver, while Markavious Anderson
and Terrence Sims, who was in possession of a firearm,
entered the business.  Markavious Anderson grabbed
Shaun Williams and advised him to lie down on the
ground, while Terrence Sims grabbed another employee
and ordered her to open the safe.  After they obtained
money from the safe, Markavious Anderson and Terrence
Sims exited and were picked up in front of the
business by **Frank Skinner**.  The group subsequently
traveled to an apartment complex, where they split the
money.  Markavious Anderson stated he received $200
from this robbery.

15.  Continuing on November 10, 2009, officers
confronted **Frank Skinner** about the information
received from Markavious Anderson.  At that time,
**Frank Skinner** stated, "I lied about being a hostage.
I was a willing participant."  According to **Frank
Skinner**, he and Markavious Anderson picked up [the
juvenile].  When they were all in the vehicle,
Markavious Anderson advised them that they were going

to rob Pizza Hut. [The juvenile] said, "hell naw," because he did not have anything to cover his face. Markavious Anderson then provided him with a ski mask. When the group arrived at Pizza Hut, a security officer was in the parking lot. **Frank Skinner** stated, "Naw bra. I'm about to go and take ya'll back home." At that time, Markavious Anderson called Shaun Williams and advised him to go outside. Markavious Anderson spoke with Shaun Williams outside the business. When he returned, he told **Frank Skinner**, "You are going to have to do this because the manager saw me talking to Shaun." Markavious Anderson then gave Frank Skinner a firearm and a scarf. After taking a minute to think about it, **Frank Skinner** decided to participate. Afterwards, [the juvenile] and **Frank Skinner** exited the vehicle and walked to the front of the business. [The juvenile] entered the code to gain access to the establishment and "pulled in" an employee who had been outside smoking a cigarette. Once inside, [the juvenile] tended to the cash registers while **Frank Skinner** tended to the safe. In reference to the employee who **Frank Skinner** ordered to open the safe, he stated, "I went over there. I had the gun, but not right on her. I told her to open the safe. She came out of her pocket with some money. She handed me money off her shirt and gave it to me. She told me the safe is going to take me about ten minutes. I said, let's go." **Frank Skinner** subsequently ran out of the business through the rear exit.

16. **Frank Skinner** also admitted to participating in the Pizza Hut robbery, which occurred on September 13, 2009. He stated that he and Terrence Sims were "kicking it at a party" at the home of Markavious Anderson. Markavious Anderson spoke to Shaun Williams on the phone and later asked, "Man, do you want to take us up there so we can do this?" Terrence Sims stated, "I sure do need the money." **Frank Skinner** agreed and acted as the driver, while Markavious Anderson and Terrence Sims robbed the Pizza Hut. When Markavious Anderson and Terrence Sims returned to the vehicle, **Frank Skinner** told them, "Dang, ya'll is crazy." The group returned to the home of Markavious Anderson where they counted the money. **Frank Skinner** stated, "We split the money up. They gave me mine,

and that was it." He reported he received, "$200 or
$300. Not really sure."

(PSR at 5-9.)

In light of the physical evidence, the likely eyewitness
testimony, the likely testimony of codefendants, and Skinner's
own confession, the Court finds that it was entirely appropriate
for Skinner's counsel to advise him that "the Government would
easily establish" his guilt. Additionally, although it would
have been somewhat hyperbolic if Skinner is correct that his
counsel stated that he would receive a life sentence, the PSR
calculated that Skinner was facing a mandatory term of
incarceration of at least 32 years, and a likely sentence of
more than 37 years. (PSR at 17-18.) Skinner could not have
suffered any prejudice from his counsel's alleged statement
because the Court specifically stated during the sentencing
hearing the correct sentencing range that Skinner would have
faced absent a plea agreement. (<u>United States v. Skinner</u>, No.
2:10-cr-20017-JPM-1 (W.D. Tenn.), ECF No. 184 at PageID 340-41.)

Finally, Skinner's assertion that "the Guidelines
recommended a sentence far less than the Government's Plea
Offer" is factually incorrect. Absent the plea agreement, as
noted above, Skinner faced a likely sentence more than 10 years
greater than the sentence that was agreed to in the plea
agreement.

"Surmounting Strickland's high bar is never an easy task."
Padilla, 559 U.S. at 371. Skinner has failed to show that his
"counsel made errors so serious that counsel was not functioning
as the 'counsel' guaranteed the defendant by the Sixth
Amendment." Strickland, 466 U.S. at 687. Accordingly, the
Court finds Skinner's claim that his counsel was
constitutionally ineffective for advising him to accept the
guilty plea in this case to be without merit.

**B.   Failing to Withdraw the Guilty Plea or Obtain Some
       Other Form of Remedy During Sentencing**

Skinner argues that because "the Guidelines recommended a
sentence less than 'half' of the term proposed in the Plea
Agreement," counsel was ineffective for failing to withdraw the
plea or obtain some other form of remedy. (§ 2255 Motion at
PageID 5–6.)

As noted above, Skinner incorrectly determined the sentence
prescribed by the Sentencing Guidelines in the absence of the
plea agreement. The Guidelines prescribe a sentence of at least
nearly 12 years of incarceration more than he received pursuant
to the plea agreement. For the reasons already stated, defense
counsel was not ineffective for failing to withdraw the plea
deal or to seek some other remedy. Consequently, the Court
finds this claim to be without merit.

**C.    Failing to Consult Skinner About Whether to File an Appeal**

Skinner argues that his counsel was constitutionally ineffective because: "[a]fter sentencing, my lawyer made no efforts to consult with me about whether or not to file an appeal." (Id. at PageID 7.)  Respondent argues in response that this argue lacks merit because Skinner waived his right to appeal.  (ECF No. 6 at PageID 29.)

The Court agrees with Respondent.  Skinner was advised in his plea agreement that he was waiving his right to appeal:

> The Defendant understands that Title 18, United States Code Section 3742 gives him the right to appeal the sentence imposed by the Court.  Acknowledging this, defendant knowingly and voluntarily waives his right to appeal the sentence imposed and the manner in which the sentence is determined so long as the sentenced imposed by the Court is  is [sic] 300 months imprisonment. This waiver is made in exchange for the concessions made by the United States in this Plea Agreement. The waiver in this paragraph does not apply to claims related to prosecutorial misconduct and ineffective assistance of counsel.

(United States v. Skinner, No. 2:10-cr-20017-JPM-1 (W.D. Tenn.), ECF No. 104 at PageID 132.)  The Court further advised Skinner of his rights and confirmed his desire to waive his right to appeal:

> [THE COURT:]  I know that you have agreed to waive your right to appeal if the court imposes this sentence because of the benefits obtained by you as a result of the plea agreement.  So that was your decision, it is a right that you have agreed to waive. I'm required, however, to tell you about your rights to appeal no matter what, and also because you have a

right to appeal prosecutorial misconduct [of] which
there is absolutely no evidence in this case, and
ineffective assistance of counsel [of] which there is
absolutely no evidence.  In fact, you have had good
counsel who has greatly reduced your exposure in the
case, but I'm required to tell you anyway.

You can appeal your conviction normally if you
didn't waive your right if you believed that your
guilty plea was somehow unlawful or involuntary or if
there[] [is] some other fundamental defect in the
proceedings not waived by your guilty plea, and you
would normally be able to appeal your sentence under
certain circumstances, particularly if you thought
that the sentence was contrary to law.  You have
agreed to waive that.

.  .  .  .

Now, in this case, for the benefits received
under the plea agreement, you have agreed to waive
your right to appeal.  Is it your intention to waive
your right to appeal this case?

THE DEFENDANT:  Yes.

THE COURT:  Are you still doing what your plea
agreement provided?

THE DEFENDANT:  Yes.

(Id., ECF No. 184 at PageID 376-77.)  Skinner was fully advised

of his rights on multiple occasions.  Based on the Court's

recollection and the multiple times at which Skinner's rights

were explained to him, the Court finds that the waiver of his

right to appeal was knowing and voluntary.  See, e.g., United

States v. Norman, 416 F. App'x 540, 541 (6th Cir. 2011).

Because Skinner had validly waived his right to appeal,

defense counsel did not provide ineffective assistance by

failing to consult Skinner about how to file an appeal.  The
Court finds that this claim is without merit.

**D.   Failing to Object to Double-Counting**

Skinner argues that his counsel was constitutionally
ineffective because he failed to alert the Court that "a six
point firearm enhancement for Count One was double-counting."
(§ 2255 Motion at PageID 8.)

Skinner cannot show any prejudice resulting from this
alleged failure.  The Court accepted the plea agreement, which
was agreed to "pursuant to Rule 11(c)(1)([C]) of the Federal
Rules of Criminal Procedure."  (United States v. Skinner, No.
2:10-cr-20017-JPM-1 (W.D. Tenn.), ECF Nos. 104 at PageID 131.)
A plea agreement made pursuant to Rule 11(c)(1)(C), if accepted,
binds the Court to impose the sentence agreed upon in the plea
agreement.  Consequently, the sentence imposed would not have
changed even if defense counsel had objected to calculations in
the PSR.  Skinner's claim is therefore without merit.

**IV.  CONCLUSION**

The motion, together with the files and record in this case
"conclusively show that the prisoner is entitled to no relief."
28 U.S.C. § 2255(b).  Defendant's conviction and sentence are
valid and, therefore, his Motion to Vacate (ECF No. 1) is
DENIED.  Judgment shall be entered for the United States.

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. § 2253(c)(2), (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citation omitted) (internal quotation marks omitted).  A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337.  Courts should not issue a COA as a matter of course.  Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, Defendant's claims lack substantive merit and, therefore, he cannot present a question of some substance about which

reasonable jurists could differ.  The Court, therefore, DENIES a
certificate of appealability.

The Sixth Circuit has held that the Prison Litigation
Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to
appeals of orders denying § 2255 motions.  <u>Kincade v. Sparkman</u>,
117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma
pauperis in a § 2255 case, and thereby avoid the appellate
filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner
must obtain pauper status pursuant to Federal Rule of Appellate
Procedure 24(a).  <u>Kincade</u>, 117 F.3d at 952.  Rule 24(a) provides
that a party seeking pauper status on appeal must first file a
motion in the district court, along with a supporting affidavit.
Fed. R. App. P. 24(a)(1).  Rule 24(a), however, also provides
that if the district court certifies that an appeal would not be
taken in good faith, or otherwise denies leave to appeal in
forma pauperis, the prisoner must file his motion to proceed in
forma pauperis in the appellate court.  <u>See</u> Fed. R. App. P.
24(a)(4)-(5).

In this case, for the same reasons the Court denies a
certificate of appealability, the Court determines that any
appeal would not be taken in good faith.  It is, therefore,
CERTIFIED, pursuant to Federal Rule of Appellate Procedure
24(a), that any appeal in this matter would not be taken in good
faith, and leave to appeal in forma pauperis is DENIED.  If

Defendant files a notice of appeal, he must also pay the full
$505 appellate filing fee (see 28 U.S.C. §§ 1913, 1917) or file
a motion to proceed in forma pauperis and supporting affidavit
in the United States Court of Appeals for the Sixth Circuit
within thirty (30) days (see Fed. R. App. P. 24(a) (4)–(5)).

**IT IS SO ORDERED,** this 15th day of July, 2014.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE